# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KENNY SHEPPARD,

                Petitioner,          :    Case No. 1:13-cv-814

     - vs -                          District Judge Timothy S. Black
                                     Magistrate Judge Michael R. Merz

WARDEN, Warren  Correctional Institution,
                                 :
                Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 26) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 23). Judge Black has recommitted the case for reconsideration in light of the Objections (Doc. No. 28).

Sheppard was indicted on five counts of rape of his thirteen-year-old stepdaughter in violation of Ohio Revised Code § 2907.02(A)(2), a felony of the first degree. The trial court submitted Count 1 to the jury on the lesser included offense of gross sexual imposition, along with the other four counts of rape. The jury convicted on all the charges submitted to it and the trial court sentenced Sheppard to an aggregate of forty years imprisonment and classified him as a Tier III sex offender.

After exhausting available state court remedies, Sheppard filed this habeas corpus case, pleading nine Grounds for Relief. The Report recommended that all Grounds for Relief be dismissed with prejudice and Sheppard filed the pending Objections.

1

# Analysis

**Unpled Claim:  Prosecutorial Misconduct**

Sheppard devotes the first portion of his Objections (Doc. No. 26, PageID 653-54) to a claim that is not included in the Petition.  The statute under which he was charged, Ohio Revised Code § 2907.02(A)(2),  provides:  "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  Sheppard asserts the prosecutor misled him and his attorney into believing the State intended to prove he had used physical force or the threat of it to compel the victim to submit.  He was confident he could defeat that claim and so stood on his plea of not guilty and went to trial.  If, he says, the prosecutor had been candid and admitted he was going to rely on proving "psychological force," Sheppard would have negotiated a plea instead of going to trial.

This claim is not made in the Petition and is thus not dealt with in the Report.  It depends on facts outside the record on direct appeal.  Such a claim, assuming it states a constitutional violation,[1] would have to have been raised by a petition for post-conviction relief under Ohio Revised Code § 2953.21.  Sheppard has never filed such a petition and his time for doing so has expired.   It was partially on this basis that the Magistrate Judge denied Sheppard's contemporaneous Motion for Stay and Abeyance (Order, Doc. No. 29, PageID 666).

In support of this claim, Sheppard relies on Judge Spiegel's decision in *Hargrove v. Haviland,* 2005 U.S. Dist. LEXIS 11013 (S.D. Ohio 2005).   Hargrove was convicted of aggravated burglary and persuaded Magistrate Judge Timothy Hogan that the State had failed to

---

[1] The claim seems to be something like prosecutorial misconduct by "sandbagging."  The Magistrate Judge is unaware of any Supreme Court precedent declaring such conduct to be improper.

submit sufficient evidence that a person was likely to be present in the burglarized residence at the time of the crime.  Judge Spiegel adopted Judge Hogan's Report and Recommendations and granted the writ, requiring the State to retry Hargrove for aggravated burglary or sentence him for the lesser included offense of burglary.

Contrary to Sheppard's assertion, Judge Spiegel did not "recognize[ ] the cruel and unusual punishment by excessive sentence that would result by overlooking (or explaining-away) the injustice imposed on Hargrove." (Objections, Doc. No. 26, PageID 653.)  *Hargrove* does not involve application of the Cruel and Unusual Punishment Clause.  Rather, it is a straightforward application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Jackson* is also directly applicable to this case as discussed below with respect to the Seventh Ground for Relief.

**Ground One:          Prior Bad Acts**

In his First Ground for Relief, Sheppard complains that his wife was permitted to testify "Mr. Sheppard kept going in to be incarcerated, so I moved on."  The Warden asserted this claim was procedurally defaulted because his lawyer failed to make a contemporaneous objection and the Report adopted this argument (Doc. No. 23, PageID 616-19).

Sheppard objects that he can show excusing cause in that a cashier at Warren Correctional sent his papers late to some court (Doc. No. 26, PageID 657-58).  This is the same excusing cause Sheppard presented in his Traverse and the Report noted this late filing was not the procedural default relied on by the respondent (Doc. No. 23, PageID 619).  The Objections do not respond to that point.

3

Therefore no further analysis is needed on the First Ground for Relief.

**Ground Two:  Prosecutorial Misconduct**

Sheppard claims he was denied a fair trial because the prosecutor gave the jury the erroneous impression that Sheppard was insulting the victim.

In his final argument to the jury, the prosecutor said Sheppard had written letters after he was incarcerated for these offenses but before trial in which he called the victim a "whore" and a "liar."  In fact the prosecutor did characterize what Sheppard had said about the victim by using each of those words twice in closing, at Trial Tr. PageID 561 and 564 (See Return of Writ, Doc. No. 17-5).

The court of appeals found that this was not misconduct but proper argument, based on what Sheppard had written to his wife, Charlotte Baker, about the victim (quoted from trial transcript at Report, Doc. No. 23, PageID 619-20).  In the Traverse, Sheppard's sole argument was that the prosecutor gave the jury "the false impression that defendant was insulting the alleged victim."  (Doc. No. 21.)  The Report concluded that the letter was in fact insulting to the victim and agreed with the court of appeals that the prosecutor's characterization was not false and therefore not misconduct (Doc. No. 23, PageID 620).

In his Objections, Sheppard shifts ground.  Rather than denying that the letter did in fact insult the victim by accusing her of sexual promiscuity and lying, Sheppard now says the prosecutor's misconduct was to claim he called the victim a "whore" and a "liar" and he did not in fact use those precise words (Objections, Doc. No. 26, PageID 658).

In the letter, Sheppard accused the victim of having sex with two men other than himself,

4

of being sexually attracted to Sheppard because she "wanted what you have," and of being a "fast-ass daughter." He does not use the word "whore," nor does he imply she was being paid for the sex. He certainly accuses the victim of lying to her mother about his touching her before the November 2009 incident where the mother found them in bed together, although he does not use the word "liar."

In his closing argument, the prosecutor does not purport to quote Sheppard as using the words "whore" and "liar." Rather, he characterizes what Sheppard said in the letter as amounting to accusing the victim of being a whore and a liar. This was fair argument, as the court of appeals held. In contemporary usage, "whore" means a promiscuous person. Oxford Dictionary of Modern Slang at 286 (New York 1992). And to accuse someone of lying amounts to accusing them of being a liar, at least on the occasions referred to.

Ground Two is without merit.


**Ground Three:  Unconstitutionality of Application of the Adam Walsh Act to Petitioner**


Sheppard raises no objection to dismissing this Ground for Relief.


**Ground Four:  Improper Jury Instruction on Force Element**


In his Fourth Ground for Relief, Sheppard complains of the trial judge's instruction to the jury on the element of force required to prove rape. The First District Court of Appeals found the instructions properly stated Ohio law. The Report concluded the instructions were not "taken as a whole  . . . so infirm that they rendered the entire trial fundamentally unfair." (Report, Doc.

No. 23, PageID 621, quoting *Henderson v. Kibbe,* 431 U.S. 145 (1977)).  Sheppard objects again that the instructions were erroneous (Doc. No. 26, PageID 659).

Deciding this claim, the First District held:

> The trial court instructed the jury, pursuant to *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), that a person in the role of a parent can exert force that is subtle and psychological and arises from the nature of the parent-child relationship. Both the victim and her mother testified that Sheppard had a parenting role, and that he was the only father the victim had known. The fact that her mother was the person who disciplined the child was not enough to demonstrate that Sheppard did not meet the requirements of the instruction. We overrule his fourth assignment of error.

*State v. Sheppard,* Case No. C-110345 (1st Dist. July 25, 2012)(unreported, copy at Return of Writ, Doc. No. 17-1, at PageID 211.)

In *Eskridge* the defendant was convicted of the forcible rape of his four-year-old daughter and sentenced to life imprisonment.  The Cuyahoga County Court of Appeals reversed, finding insufficient evidence on the element of force.  The Ohio Supreme Court reinstated the rape conviction and held

> The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.

*Eskridge*, ¶ 1 of the syllabus, 38 Ohio St. 3d 56, citing *State v. Labus*, 102 Ohio St. 26, 38-39 (1921).

Sheppard does not dispute that *Eskridge* represents the current state of the law in Ohio. To the extent he disputes whether the trial judge here followed *Eskridge* in his instructions, that is a question of state law and the First District's decision that it did is conclusive on this Court:

we cannot overrule an Ohio court on a question of Ohio law.

The instruction actually given on force is as follows:

> **Force.** Force means any violence, compulsion or restraint physically exerted by any means applied against a person or thing.
>
> When the relationship of victim and defendant is one of child and stepparent, the element of force needn't be openly displayed or physically brutal. It can be subtle, slight, psychological or emotionally powerful. Evidence of an expressed threat of harm or evidence of significant physical restraint is not required.
>
> If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear, duress or intimidation, the element of force has been proved.

(Trial Tr., Return of Writ, Doc. No. 17-5, PageID 571.) Sheppard objects now that this instruction does not include the "fear and duress sub-factors" from the *Labus* case: the age, size and strength of the parties and their relation to each other" and notes that the thirteen-year-old victim here is not of "tender years" like the four-year-old in *Eskridge*. However, there is nothing in the record to indicate Sheppard's counsel ever asked for a modification of the instruction to add these items.

Ground Four is therefore without merit.


**Ground Five:  Failure to Specify Dates of Offenses or Sever Counts**


Sheppard raises no objection to dismissal of the Fifth Ground for Relief.


**Ground Six:  Violation of Privilege Against Self-Incrimination**


Sheppard raises no objection to dismissal of the Sixth Ground for Relief.

**Ground Seven:    Manifest Weight and Insufficiency of the Evidence**

In his Seventh Ground for Relief, Sheppard asserts his conviction is based on insufficient evidence and is against the manifest weight of the evidence.

The Report recommends dismissal of the manifest weight claim because it does not state a claim under the Constitution (Doc. No. 23, PageID 626-28).  The Objections make no response to this point.  However, the Objections argue at great length that there is insufficient evidence to convict.

The Report notes the governing standard for sufficiency of the evidence is stated by *Jackson v. Virginia*, *supra*, which Sheppard does not dispute.  He also does not quarrel with the proposition that, under the AEDPA, a habeas court must give double deference to both the jury's finding and the affirmance by the court of appeals.  *Id*. at PageID 628-30.  The First District rejected this assignment of error summarily, so the Report looked at the claims made in Sheppard's appellate brief.  *Id.*  at 630-33.  The Report concluded that the argument in the Traverse was mostly directed to the victim's credibility, which was for the jury to decide. *Id.*  at PageID 633.

Sheppard begins his Objections by reviewing the testimony that purported to show he was in a parental role in relation to the victim (Objections, Doc. No. 26, PageID 654-57).

Ms. Baker, the victim's mother, testified that she had been high school sweethearts with Sheppard, that they were apart for about fourteen years, then got back together when they were both thirty-two and married when they were about forty-two (Trial Tr., Return of Writ, Doc. No. 17-3, PageID 328).  The victim, D.M., is Ms. Baker's youngest child and lived with her and

8

Sheppard in 2009. She was thirteen in November 2009. *Id.* at PageID 329-30. Although Sheppard is not her natural father, he had lived with her and Ms. Baker from the time she was five as an "acting father." Ms. Baker admitted that she was the one who disciplined D.M. The victim and Sheppard had been very close in the younger years, but toward the very end of their time living together, she became angry toward Sheppard. *Id.* at PageID 333-34.

During Ms. Baker's testimony, she read several letters she had received from Sheppard in jail. In State's Exhibit 1 he asked her to tell D.M. he never meant to hurt her. *Id.* at PageID 352. State's Exhibit 2 is another letter from Sheppard which is quoted above with respect to Ground for Relief Two. In State's Exhibit 3 he admits that what he did was "very, very wrong." *Id.* at PageID 356. He then blamed his behavior on the night when she caught him on alcohol and the devil. *Id.* He appealed to her marriage vows to get her to support him. *Id.* at PageID 357. He asked her to drop the charges or not show up at court. *Id.* at PageID 360. He claims that a doctor would tell Ms. Baker that D.M. is still a virgin. *Id.* at PageID 361. Ms. Baker testified D.M. began barricading her bedroom door in the fall of 2009. *Id.* at PageID 366-67.

On cross-examination, she testified D.M. was crying when she caught Sheppard in be with her, but she had no physical injuries. *Id.* at PageID 375. She did admit that she had assaulted Sheppard "very much so" when she caught him and that D.M. jumped on her back to try to stop her from assaulting him. *Id.* at PageID 382. In the context of this assault, D.M. said to her mother "[p]please, ma, I don't want you to go to jail. Don't kill him."[2]

D.M. also testified. *Id.* at PageID 401- 453. On the night of November 6, 2009, Sheppard came into her room and began touching her breasts and thighs. *Id.* at PageID 404. She tried to get up, but he put his weight on her and started to take off her underpants. *Id.* at PageID 405. He then placed his penis in her vagina. *Id.* at PageID 406. She tried to get up but

---

[2] On direct Ms. Baker testified she has a black belt in martial arts and clearly intended to hurt Sheppard.

eventually gave in because she was afraid of Sheppard. *Id.* at PageID 407. She cooperated because she felt he was in a position of authority over her. *Id.* at PageID 408. After November 9, 2009, she went through counseling to help her overcome what had happened. *Id.* at PageID 413.

She testified the incidents with Sheppard began shortly after July 4, 2009, when she was on punishment. *Id.* at PageID 414. On that occasion he only rubbed her breasts, then left the room. About a month later another incident happened in which he rubbed her genitals and then penetrated her. *Id.* at PageID 418. She testified he had sex with her about ten times between the second incident in August and November 6, 2009. *Id.* at PageID 419. On a number of occasions between August and November, he put his mouth on her vagina. *Id.* at PageID 421. She told him to stop, but he did not. *Id.* at PageID 422. To stop him from coming into her room, she put totes against the door. *Id.* She would wear tight jeans to bed to dissuade Sheppard and that worked four times. *Id.* at PageID 423.

On cross-examination D.M. testified Sheppard would try to slap her when she would get "smart" with him after the incidents happened, but her mother would not let him. *Id.* at PageID 427.

Sheppard argues in his Objections that this testimony is not enough to prove forcible rape. Of course on Count 1 the conviction was for gross sexual imposition, because the testimony was only that sexual contact occurred, not sexual conduct. But as to the other occasions, D.M. testified to penetration and the use of force to hold her down. There is no testimony whatsoever to support Sheppard's allegations in his letter to his wife that D.M. was sexually promiscuous. The fact that she was able to dissuade him by wearing tight jeans to bed does not mean he did not use force on other occasions before she learned this technique. In any

event, the fact that a woman is not forced into sex on one occasion does not imply she was not forced on other occasions.  And a thirteen-year-old girl should not be forced to wear blue jeans to bed to keep her stepfather from having sex with her.

Sheppard complains about the failure to instruct on the *Eskridge* "sub-factors."  However, there is no testimony on the relative size or strength of the parties.  An instruction on relative age would not have been helpful to Sheppard who was, at forty-two, more than three times D.M.'s age.  Sheppard also fails to mention that during this stage of his marriage to Ms. Baker, he was often alone in the house with D.M., which could well have contributed to her sense of his authority over her.

Sheppard relies on *State v. Haschenburger*, 2007 Ohio App. LEXIS 1446 (7th Dist. 2007).  There defendant was convicted of ten counts of rape.  Nine were affirmed, but the count for the last in time event was overturned on evidence that the victim was over sixteen at the time and actually drove to Haschenburger's home with the intention of sleeping over, having lied to her parents about what she was doing.  Incidentally, the *Haschenburger* court noted that the Ohio Supreme Court had broadened the criteria for persons in authority who were in a position to use "subtle" force beyond parents and stepparents in *State v. Dye,* 82 Ohio St. 3d 323 (1998).  Haschenburger himself was only a family friend.

Sheppard also relies on *In re:  L.R.F., A Minor Child*, 2012 Ohio App. LEXIS 3760 (8th Dist. 2012).  There the accused was not a person in a position of authority, but a maternal cousin.  Sheppard adverts to D.M.'s having tried physically to stop her mother from assaulting Sheppard and asks the rhetorical question "[w]ould a rape victim attack the person who was attacking the rapist." (Objections, Doc. No. 26, PageID 660.)  Ms. Baker's testimony put that admitted fact in context.  She testified her daughter pleaded with her not to kill Sheppard because then she would

lose her mother to prison. That is perfectly consistent with D.M.'s having been raped and being embarrassed at not having told her mother before.

The Magistrate Judge has reviewed all the testimony by D.M. and her mother. Taken together, it provides sufficient testimony on every element of the offenses of which Sheppard stands convicted. Sheppard's own argument in the Objections does not treat that testimony as a whole, but picks pieces from it to emphasize. This Court must defer to the jury's and court of appeals' evaluation of the testimony as a whole. The Seventh Ground for Relief should be dismissed.

## Ground Eight:  Cruel and Unusual Punishment by Excessive Sentence

Sheppard asserts in his Eighth Ground for Relief that his cumulative sentence of forty years imprisonment violates the prohibition on cruel and unusual punishment in the Eighth Amendment. Noting that Sheppard admitted he was sentenced within the statutory maximum, the Report recommended dismissal of this Ground for Relief because a sentence within the statutory maximum does not constitution cruel and unusual punishment within the meaning of the Eighth Amendment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

Sheppard objects not to the sentences, but to the damning effect of being charged with rape as opposed to sexual battery (Objections, Doc. No. 26, PageID 661-62). He notes the supposed evidentiary problems with defending such a charge and alleges (for the first time in these proceedings) that his jury was biased against him from the outset.

The Eighth Amendment has to do with punishment, not the offenses on which the grand jury finds probable cause. Sheppard's Eighth Ground for Relief should therefore be dismissed

12

with prejudice on the basis stated in the Report.

**Ground Nine:  *Batson* Violation**

Sheppard makes no objection to the recommended dismissal of his Ninth Ground for Relief.

**Conclusion**

Having reviewed the Report in light of the Objections, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 5, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).